## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| SECURITY NATIONAL PROPERTIES FUNDING III, LLC, *et al.*,[1] | Case No. 11-13277 (KG) |
| Debtors. | Jointly Administered |
| | **Hearing Date: August 22, 2014 at 10:00 a.m. (ET) [Requested]** **Objections Due: August 19,  2014 at 4:00 p.m. (ET) [Requested]** |

**JOINT MOTION OF DEBTORS AND BANK OF AMERICA, N.A., AS AGENT FOR THE SENIOR LENDERS, FOR ENTRY OF AN ORDER (A) APPROVING THE DISCLOSURE STATEMENT, (B) ESTABLISHING THE VOTING RECORD DATE, VOTING DEADLINE AND OTHER DATES, (C) APPROVING PROCEDURES FOR SOLICITING, RECEIVING AND TABULATING VOTES ON THE PLAN AND FOR FILING OBJECTIONS TO THE PLAN AND (D) APPROVING THE MANNER AND FORMS OF NOTICE AND OTHER RELATED DOCUMENTS**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] and

Bank of America, N.A., in its capacity as agent for the Senior Lenders, ("Bank of America" or

"Agent" and, together with the Debtors, the "Co-Proponents") hereby move this Court (the

"Motion") for entry of an order, in substantially the form attached hereto as **Exhibit A** (the

"Disclosure Statement Order"), pursuant to sections 105(a), 1125, and 1126 of title 11 of the

United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code"), Rules 2002,

3003, 3017, 3018, and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Security National Properties Funding III, LLC (4558), ITAC 190, LLC (4378), Security National Properties Funding, LLC (4037), Security National Properties Funding II, LLC (9204), Sequoia Investments III, LLC (7204), Sequoia Investments V, LLC (5313), Sequoia Investments XIV, LLC (4387), Sequoia Investments XV, LLC (3814), Sequoia Investments XVIII, LLC (6160), and Security National Properties-Alaska, LLC (6563).  The Debtors' address is: Security National Properties Funding III, LLC, c/o Security National Properties, 323 Fifth Street, Eureka, CA 95501.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Disclosure Statement (as defined below).

Rules") and Rule 3017-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (a) approving the Disclosure Statement (as defined herein), (b) establishing the voting record date, voting deadline and other related dates, (c) approving procedures for soliciting, receiving and tabulating votes on the Plan (as defined herein) and for filing objections to the Plan, (d) approving the manner and forms of notice and other related documents and (e) granting other relief relating thereto as set forth herein. In support of this Motion, the Co-Proponents, through their undersigned counsel, respectfully states:

## JURISDICTION

1.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 1125, and 1126 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2002, 3003, 3017, 3018, and 3020 and Local Rule 3017-1.

3.      The Co-Proponents consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

4.      On October 13, 2011 (the "Petition Date"), each of the Debtors filed a petition with the Court under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.       Since the Petition Date, Bank of America and the Debtors have attempted to reach a resolution to these Chapter 11 Cases.  After much litigation and repeated attempts to reach a consensual resolution of the Chapter 11 Cases, on August 12, 2014, the Debtors, Security National Properties Holding Company, LLC ("SNP Holding"), Security National Properties Servicing Company, LLC ("SNP Servicing"), Robin P. Arkley II ("Arkley" and together with the Debtors, SNP Holding, and SNP Servicing, the "SN Parties"), and the Bank of American, in its capacity as Agent and Senior Lender, and the other Senior Lenders (all parties referenced above, collectively, the "Settling Parties") a settlement agreement (the "Settlement Agreement").

6.       The Settlement Agreement is a comprehensive settlement that resolves all remaining disputed matters in these bankruptcy cases as between the SN Parties and the Agent and the Senior Lenders, thereby eliminating substantial uncertainty and expense associated with further litigation of the Settling Parties' complex disputes.  More importantly, through the Settlement Agreement, the Debtors have paved the way for the efficient and expeditious resolution of the Debtors' chapter 11 cases, as well as the consummation of a series of refinance transactions that the SN Parties believe are extremely important to the ongoing operations of the Real Estate Portfolio.

7.       Contemporaneously with the filing of this Motion, the Debtors have filed a motion pursuant to Bankruptcy Rule 9019 to approve the Settlement Agreement (the "9019 Motion").  By a related scheduling motion, the Debtors are requesting that the Court convene a hearing to approve the 9019 Motion and this Motion on the previously-scheduled omnibus hearing date of August 22, 2014.

8.     Before the Settling Parties entered into the Settlement Agreement, the Agent filed the *Plan of Reorganization of Security National Properties Funding III, LLC and Its Debtor Affiliates Filed by Bank of America, N.A., as Agent for Senior Lenders* (the "Original Agent Plan") [Docket No. 875].

9.     In connection with that Agent Plan, the Agent file the *Disclosure Statement for Chapter 11 Plan of Reorganization of Security National Properties Funding III, LLC and Its Debtor Affiliates Filed by Bank of America, N.A., as Agent for Senior Lenders* (the "Original Agent Disclosure Statement") [Docket No. 876] and the *Motion of Bank of America, N.A., as Agent for Senior Lenders, for Entry of an Order (a) Approving the Disclosure Statement, (b) Establishing the Voting Record Date, Voting Deadline and Other Dates, (c) Approving Procedures for Soliciting, Receiving and Tabulating Votes on the Plan and for Filing Objections to the Plan and (d) Approving the Manner and Forms of Notice and Other Related Documents* (the "Agent Disclosure Statement Motion") [Docket No. 886].[3]

10.     On July 30, 2014, the Court entered the *Order Approving Motion of Bank of America, N.A., as Agent the for Senior Lenders, for Entry of an Order (a) Approving the Disclosure Statement, (b) Establishing the Voting Record Date, Voting Deadline and Other Dates, (c) Approving Procedures for Soliciting, Receiving and Tabulating Votes on the Plan and for Filing Objections to the Plan and (d) Approving the Manner and Forms of Notice and Other Related Documents* (the "Agent Disclosure Statement Order") [Docket No. 965].  The Agent Disclosure Statement Order contemplated the possibility of the Settlement Agreement and

---

[3]     The Debtors reserved all rights and objections with respect to, among other things, confirmation of the Agent Plan through the filing of the *Debtors' Limited Objection and Reservation of Rights as to Disclosure Statement and Related Plan Procedures Motion filed by Bank of America, N.A., as Agent* [Docket No. 956].

provides that a plan of reorganization filed in accordance with the Settlement Agreement shall supersede the Agent Plan (as defined below).

11.     August 1, 2014, the Agent filed the *Revised Plan of Reorganization of Security National Properties Funding III, LLC and Its Debtor Affiliates Filed by Bank of America, N.A., as Agent for Senior Lenders* [Docket No. 970] (the "Agent Plan"), and its related disclosure statement in substantially the form as approved by the Court in the Agent Disclosure Statement Order [Docket No. 971] (the "Agent Disclosure Statement")

12.     As described in detail in the 9019 Motion and the Settlement Agreement, among other things, the Settlement Agreement provides for the filing, solicitation and prosecution of a chapter 11 plan that has been agreed upon by the Settling Parties.[4]   In furtherance of these provisions of the Settlement Agreement, on August 12, 2014, the Co-Proponents filed the *Joint Plan of Reorganization of Security National Properties Funding III, LLC and its Debtor Affiliates* (the "Plan").  On that same day, the Co-Proponents filed the   *Disclosure Statement for Joint Plan of Reorganization of Security National Properties Funding III, LLC and its Debtor Affiliates* (the "Disclosure Statement").

13.     In accordance with sections 1122 and 1123 of the Bankruptcy Code, the Plan contemplates classifying Holders of Claims and Equity Interests into various Classes for all purposes, including with respect to voting on the Plan.

14.     There are eight (8) primary classes, classes 1-8, based on the type of Claim or Equity Interest. Each primary class further is classified into separate sub-classes based on the

---

[4]     Nothing herein or elsewhere in the Motion is intended to modify the Settlement Agreement or any definitive settlement document.  To the extent that the terms and conditions summarized herein or elsewhere in the Motion are inconsistent with the Settlement Agreement or any other settlement document, the terms of the Settlement Agreement or any other applicable settlement document shall govern.

Debtor against which such Claim is Scheduled or Filed or Equity Interest held, as applicable. The sub-classes for each class of Claims and Equity Interests shall be as follows:

| Debtor | Applicable Classes of Claims |
|---|---|
| Security National Properties Funding III, LLC | 1A, 2A, 3A, 4A, 5A, 6A, 7A, and 8A |
| ITAC 190, LLC | 1B, 2B, 3B, 4B, 5B, 6B, 7B, and 8B |
| Security National Properties Funding, LLC | 1C, 2C, 3C, 4C, 5C, 6C, 7C, and 8C |
| Security National Properties Funding II, LLC | 1D, 2D, 3D, 4D, 5D, 6D, 7D, and 8D |
| Sequoia Investments XIV, LLC | 1E, 2E, 3E, 4E, 5E, 6E, 7E, and 8E |
| Sequoia Investments III, LLC | 1F, 2F, 3F, 4F, 5F, 6F, 7F, and 8F |
| Sequoia Investments V, LLC | 1G, 2G, 3G, 4G, 5G, 6G, 7G, and 8G |
| Sequoia Investments XV, LLC | 1H, 2H, 3H, 4H, 5H, 6H, 7H, and 8H |
| Sequoia Investments XVIII, LLC | 1I, 2I, 3I, 4I, 5I, 6I, 7I, and 8I |

15.    A summary of the treatment for each primary class[5] is set forth in the following table:

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Secured Governmental Unit Claims | Unimpaired | Not Entitled to Vote |
| 2 | Senior Lender Claims | Impaired | Entitled to Vote |
| 3 | Other Secured Claims | Unimpaired | Not Entitled to Vote |
| 4 | Unsecured Priority Claims | Unimpaired | Not Entitled to Vote |
| 5 | General Unsecured Claims | Unimpaired | Not Entitled to Vote |
| 6 | Intercompany Claims | Impaired | Not Entitled to Vote |
| 7 | Non-Debtor Affiliate Claims | Impaired | Not Entitled to Vote |

---

[5]    Unless otherwise specified, all references to a primary class shall be construed as a reference to and encompassing all sub-classes within the primary class.  For example, any reference to "Class 1" shall be construed as a reference to Classes 1A, 1B, 1C, 1D, 1E, 1F, 1G, 1H and 1I.

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 8A | Equity Interests (SNPF III only) | Impaired if Lender Confirmation Option implemented; Unimpaired if Debtor Confirmation Option implemented. | Not Entitled to Vote |
| 8B-8I | Equity Interests (Subsidiaries) | Unimpaired | Not Entitled to Vote |

16.      Based on the foregoing and as discussed in greater detail below, the Co-Proponents, are (a) proposing to solicit votes to accept or reject the Plan from Holders of Claims in Class 2 only (the "Voting Classes") and (b) not proposing to solicit votes from Holders of Claims or Equity Interests in Classes 1, 3, 4, 5, 6, 7 and 8 (collectively, the "Non-Voting Classes").

## RELIEF REQUESTED

17.      In this Motion, the Co-Proponents requests that this Court enter the Disclosure Statement Order which, among other things, (a) approves the Disclosure Statement, (b) establishes the voting record date, voting deadline and other related dates, (c) approves procedures for soliciting, receiving and tabulating votes on the Plan and for filing objections to the Plan, (d) approves the manner and forms of notice and other related documents and (e) grants other relief relating thereto as set forth herein.[6]

18.      The Disclosure Statement Order is substantially similar to the Agent Disclosure Statement Order, which the Court approved on July 30, 2014.  Attached hereto as **Exhibit B** is a

---

[6]      In order to expedite scheduling of the hearing on this Motion and the Disclosure Statement, as well as the overall confirmation schedule for the Plan, this Motion, the Disclosure Statement and the Plan have been filed pending this Court's consideration of the 9019 Motion.  Notwithstanding anything to the contrary in this Motion, if the Termination Date (as defined in the Settlement Agreement) occurs, the Co-Proponents will discontinue seeking confirmation of the Plan; instead, at the sole discretion of the Senior Lenders, the Agent Plan will go forward (without prejudice to the objections of the SN Parties and other parties in interest to confirmation of the Agent Plan).

blackline comparison of the Disclosure Statement Order and the Agent Disclosure Statement Order, which highlights the limited and largely nonsubstantive differences between the Disclosure Statement Order and the Agent Disclosure Statement Order.

19.    A chart listing certain dates and deadlines requested under the Disclosure Statement Order is provided below (assuming the Disclosure Statement Order is entered on August 22, 2014).

Chart of Proposed Dates and Deadlines

| Event | Date/Deadline |
|---|---|
| Voting Record Date | Date of Disclosure Statement Order |
| Solicitation Mailing Date | August 27, 2014 |
| Exhibit Filing Date (Deadline to File Plan Supplement) | September 10, 2014 |
| Voting Deadline | September 17, 2014, at 4:00 p.m. ET |
| Objection Deadline for Confirmation Hearing | September 17, 2014, at 4:00 p.m. ET |
| Confirmation Hearing | September 24, 2014 [Requested] |

## I.    Approvals Relating to Disclosure Statement

### A.  *Approval of Notice of Disclosure Statement Hearing*

20.    Bankruptcy Rule 3017(a) provides, in pertinent part:

> After a disclosure statement is filed in accordance with Rule 3016(b), the court shall hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest as provided in Rule 2002 to consider the disclosure statement and any objections or modifications thereto. The plan and the disclosure statement shall be mailed with the notice of the hearing only to the debtor, any trustee or committee appointed under the Code, the Securities and Exchange Commission, and any party in interest who requests in writing a copy of the statement or plan.

Fed. R. Bankr. P. 3017(a).

21.     By separate motion, the Co-Proponents have requested that the Court convene a hearing on August 22, 2014 at 10:00 a.m. (ET) to consider approval of the Disclosure Statement (the "Disclosure Statement Hearing").[7]

22.     Bankruptcy Rules 2002(b) and 2002(d) require notice by mail to all of a debtor's creditors and shareholders informing them of the time set for filing objections to, and the hearing to consider the approval of a disclosure statement. Pursuant to Bankruptcy Rules 2002(b) and 2002(d), the Debtors[8] will mail, a copy of such disclosure statement notice, attached to the Disclosure Statement Order as Exhibit 1 (the "Disclosure Statement Notice"), by first class mail to (a) all known creditors of the Debtors, (b) all known equity security holders of the Debtors and (c) the parties listed in paragraph 64 below.[9]

23.     The Debtors will also serve a copy of this Motion, the Disclosure Statement Notice, the Disclosure Statement, and the Plan (attached as Exhibit A to the Disclosure Statement) on the following parties: (a) the Office of the United States Trustee; (b) the Securities and Exchange Commission; (c) the Internal Revenue Service; (d) the United States Attorney's Office for the District of Delaware; and (e) all parties that have filed requests for notice in these

---

[7]     *See Debtors' Motion for Entry of an Order Under 11 U.S.C. §§ 102(1) and 105, Fed. Bankr. R. 9006 and D. Del. Local R. Bankr. P. 9006-1(e) Shortening Notice Relating to (i) Debtors' Motion for an Order, Pursuant to 11 U.S.C. §§ 105, 1107 and 1108, and Fed. R. Bankr. P. 9019, Authorizing and Approving Settlement Agreement Among the Debtors, SNP Holding, SNP Servicing, Arkley, the Administrative Agent and the Senior Lenders, and (ii) Joint Motion of Debtors and Bank of America, N.A., as Agent for the Senior Lenders, for Entry of an Order (a) Approving the Disclosure Statement, (b) Establishing the Voting Record Date, Voting Deadline and Other Dates, (c) Approving Procedures for Soliciting, Receiving and Tabulating Votes on the Plan and for Filing Objections to the Plan and (d) Approving the Manner and Forms of Notice and Other Related Documents.*

[8]     While the Co-Proponents are proponents of the Plan, as set forth in detail below, the Debtors, with the assistance of Claims Agent (as defined below), will perform certain service and noticing functions in connection with the Disclosure Statement and the Plan.

[9]     The Debtors will mail the Disclosure Statement Notice as soon as practicable following the Court's scheduling of a hearing to consider this Motion.

Chapter 11 Cases pursuant to Bankruptcy Rule 2002 as of the date hereof.  Moreover, copies of such documents are available in accordance with paragraph 63 below.

24.    The Disclosure Statement Notice provides that objections or responses to the Disclosure Statement, if any, must: (i) be made in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) state with particularity the legal and factual basis for the objection; and (iv) be filed with the Bankruptcy Court (contemporaneously with a proof of service), and be served so as to be actually received by each of the following parties (collectively, the "Notice Parties") on or before 4:00 p.m. (prevailing Eastern Time) on August 19, 2014 (the "Disclosure Statement Objection Deadline"):[10]

a. Counsel to Bank of America:
   i. Troutman Sanders LLP, 600 Peachtree St. NE, Suite 520, Atlanta, GA 30308 (Attn: Jeffrey W. Kelley); and
   ii. Richards, Layton and Finger, P.A., 920 N. King St., Wilmington, DE 19801 (Attn: Mark D. Collins);

b. Counsel to the Debtors: Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, DE 19899-1347 (Attn: Gregory W. Werkheiser); and

c. The Office of the United States Trustee for the District of Delaware: 844 King Street, Suite 2207, Lockbox #35, Wilmington, DE 19899-0035 (Attn: Tiiara N.A. Patton).

25.    Requiring that objections to the Disclosure Statement be filed by the Disclosure Statement Objection Deadline will afford the Court and the Co-Proponents sufficient time to consider objections before the Disclosure Statement Hearing. The Co-Proponents submit that the

---

[10]    The Debtors have requested this objection deadline pursuant to the *Debtors' Motion for Entry of an Order Under 11 U.S.C. §§ 102(1) and 105, Fed. Bankr. R. 9006 and D. Del. Local R. Bankr. P. 9006-1(e) Shortening Notice Relating to (i) Debtors' Motion for an Order, Pursuant to 11 U.S.C. §§ 105, 1107 and 1108, and Fed. R. Bankr. P. 9019, Authorizing and Approving Settlement Agreement Among the Debtors, SNP Holding, SNP Servicing, Arkley, the Administrative Agent and the Senior Lenders, and (ii) Joint Motion of Debtors and Bank of America, N.A., as Agent for the Senior Lenders, for Entry of an Order (a) Approving the Disclosure Statement, (b) Establishing the Voting Record Date, Voting Deadline and Other Dates, (c) Approving Procedures for Soliciting, Receiving and Tabulating Votes on the Plan and for Filing Objections to the Plan and (d) Approving the Manner and Forms of Notice and Other Related Documents* (the "Motion to Shorten"), which will be filed on the date hereof.

foregoing notice and objection procedures provided adequate notice of the Disclosure Statement Hearing and, accordingly, request that the Court deem such notice as having been adequate pursuant to Bankruptcy Rules 2002 and 3017.

B. *Approval of Disclosure Statement as Containing "Adequate Information"*

26.    Section 1125(b) of the Bankruptcy Code prohibits post-petition solicitation of a chapter 11 plan unless the plan (or summary thereof) and "a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information" are transmitted to those persons whose votes are being solicited. The Co-Proponents desire to commence solicitation of acceptances of the Plan and, accordingly, requests that the Court approve the Disclosure Statement as providing adequate information within the meaning of section 1125 of the Bankruptcy Code, which defines "adequate information" as: information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan. 11 U.S.C. § 1125(a)(l). The Co-Proponents submit that the Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code.

27.    The primary purpose of a disclosure statement is to provide all material information that creditors and interest holders affected by a proposed plan need in order to make an informed decision whether to vote for the plan. *See, e.g., Century Glove, Inc. v. First Am. Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988) ("§ 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote"); *In re Monnier Bros.*, 755 F.2d 1336,

1341 (8th Cir. 1985); *In re Phoenix Petroleum, Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001); *In re Unichem Corp.*, 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987). Congress intended that such informed judgments would be needed both to negotiate the terms of and to vote on a plan of reorganization. *Century Glove*, 860 F.2d at 100.

28.      In evaluating whether a disclosure statement provides "adequate information," courts adhere to the Bankruptcy Code's instruction that making this determination is a flexible exercise based on the facts and circumstances of each case. 11 U.S.C. § 1125(a)(l) ("'adequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records"); *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *First Am. Bank of New York v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95- 989, at 121 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5907 ("the information required will necessarily be governed by the circumstances of the case").

29.      Courts, including those within the Third Circuit, acknowledge that determining what constitutes "adequate information" for the purpose of satisfying section 1125 of the Bankruptcy Code resides within the broad discretion of the court. *See, e.g., Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988) ("The determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court."); *In re PC Liquidation Corp.*, 383 B.R. 856, 865 (E.D.N.Y. 2008) ("The standard for disclosure is, thus,

flexible and what constitutes 'adequate disclosure' in any particular situation is determined on a case-by-case basis, with the determination being largely within the discretion of the bankruptcy court."); *In re River Village Associates*, 181 B.R. 795, 804 (E.D. Pa. 1995) (same); *In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (same); *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (Bankr. D. N.J. 2005) (same).

30.     The Disclosure Statement is the product of the Co-Proponents' extensive review and analysis of the Debtors' business, assets and liabilities, the circumstances leading to the Chapter 11 Cases, and other significant events occurring during the Chapter 11 Cases. In addition, the Disclosure Statement reflects Co-Proponents' thorough analysis of the Plan, including the distributions to Holders of Claims contemplated thereunder, the effect of the Plan on Holders of Claims and Equity Interests, and the resultant restructuring of the Debtors' estates if the Plan is confirmed and consummated.

31.     The Disclosure Statement contains the pertinent information necessary for the Holders of Claims entitled to vote on the Plan to make informed decisions about whether to vote to accept or reject the Plan, including, among other things, the following key sections and information contained therein:

a.   Corporate Structure and Ownership: the Debtors' corporate and capital structure;

b.   Overview of Assets and Liabilities: overview of the Debtors' business operations, their assets, and the Debtors' prepetition indebtedness;

c.   Events Leading to the Filing of the Chapter 11 Cases: a description of the critical events leading to the commencement of the Chapter 11 Cases;

d.   Significant Events in the Bankruptcy: a description of cash collateral relief, retention of professionals, filing of the Schedules, the setting of the Bar Date, and the Debtors' post-petition efforts to consensually restructure their loan with Bank of America;

e.   Summary of the Plan: summary of, among other things, the treatment and classification, if applicable, of the Claims against and Equity Interests in the Debtors, acceptance and

rejection of the Plan, means for implementation of the Plan, treatment of executory contracts and unexpired leases under the Plan, provisions governing distributions, the procedures for resolving contingent, unliquidated and disputed Claims and Equity Interests, conditions precedent to confirmation and consummation of the Plan, settlement, release, injunction and related provisions and the binding nature of the Plan;

f.  Plan-Related Risk Factors: certain risk factors that may affect the Plan, the value of the Debtors' business as well as certain risks associated with forward-looking statements and overall disclaimer as to the information provided by and set forth in the Disclosure Statement;

g.  Alternatives to Confirmation and Consummation of the Plan: liquidation under chapter 7 of the Bankruptcy Code or the confirmation of alternative plans of reorganization;

h.  Tax Consequences of the Plan: disclosure regarding potential U.S. federal income tax law consequences of the Plan with respect to Holders of Allowed Claims and Equity Interests and the Reorganized Debtors; and

i.  Financial Information: an analysis of projected cash flows and expenses of the Reorganized Debtors under the Plan and liquidation analysis.

32.    The Co-Proponents respectfully submit that the Disclosure Statement contains more than sufficient information for a hypothetical reasonable investor to make an informed judgment about the Plan and that it complies with all aspects of section 1125 of the Bankruptcy Code. *See In re US. Brass Corp.*, 194 B.R. 420, 424-25 (Bankr. E.D. Tex. 1996) (listing the factors courts have considered in determining the adequacy of information provided in a disclosure statement); *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988) (same). To the extent necessary, the Co-Proponents will further demonstrate at the Disclosure Statement Hearing that the Disclosure Statement addresses the information set forth above in a manner that provides Holders of Claims entitled to vote to accept or reject the Plan with adequate information within the meaning of section 1125 of the Bankruptcy Code. Therefore, the Co-Proponents request that this Court approve the Disclosure Statement as containing "adequate information."

## II.   Confirmation Hearing and Objections

33.   Pursuant to Bankruptcy Rule 3020(b)(2), a court shall rule on confirmation of a plan after notice and a hearing. The Co-Proponents request that the Court enter the Disclosure Statement Order setting September 24, 2014, or as soon thereafter as the Court's calendar allows, as the hearing date to consider confirmation of the Plan (the "Confirmation Hearing").

34.   Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be flied and served "within a time fixed by the court." Pursuant to this Bankruptcy Rule, the Co-Proponents request that this Court enter the Disclosure Statement Order setting September 17, 2014 at 4:00 p.m. (prevailing Eastern Time) (or as soon thereafter as possible), as the deadline (the "Confirmation Objection Deadline") for filing and serving objections to confirmation of the Plan ("Confirmation Objections").

35.   The Co-Proponents request that the Court direct that Confirmation Objections, if any, must (a) be in writing, (b) comply with the Bankruptcy Rules and the Local Rules, (c) set forth the name of the objector and the nature and amount of any claim or interest asserted by the objector against or in the Debtors, (d) state with particularity the legal and factual bases for the objection and, if practicable, a proposed modification to the Plan that would resolve such objection, and (e) be filed, contemporaneously with a proof of service, with the Bankruptcy Court and served so that it is actually received no later than the Confirmation Objection Deadline by the undersigned counsel for the Co-Proponents and the other Notice Parties (as defined above).

## III.   Establishment of Voting Record Date; Allowance of Senior Lender Claims

### A.   *Voting Record Date*

36.   Bankruptcy Rule 3018(a) provides that the "date the order approving the disclosure statement is entered or on another date fixed by the court, for cause, after notice and a

hearing" is the record date for determining the "holders of stocks, bonds, debentures, notes and other securities" entitled to receive ballots and materials necessary for voting on the plan as specified in Bankruptcy Rule 3017(d). Therefore, the Co-Proponents request that the Court ratify the date of entry of the Disclosure Statement Order as the record date (the "Voting Record Date") for determining the Holders of Claims that are entitled to receive a Solicitation Package (defined below) and/or other notices and documents as more particularly described below.

37.    With respect to any transferred Claim, the Co-Proponents further propose that the transferee will be entitled to receive a Solicitation Package and cast a Ballot (defined below), or receive other notices and documents, on account of the transferred Claim only if: (a) all actions necessary to effect the transfer of the Claim pursuant to Bankruptcy Rule 3001 (e) have been completed by the Voting Record Date; or (b) the transferee files, no later than the Voting Record Date, (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer. Notwithstanding the foregoing sentence, upon the agreement of the Co-Proponents, the Co-Proponents may waive the forgoing requirement with respect to Claims held by the Senior Lenders who have provided adequate notice to the Co-Proponents of their status as Senior Lender under the Prepetition Loan Documents as of the Voting Record Date.

B.   *Claims of the Senior Lenders Allowed for Voting Purposes*

38.    Under the Plan, only Holders of Class 2 Senior Lender Claims are entitled to vote, and the Plan provides that such Claims are Allowed, subject to the terms of the Plan. Accordingly, despite any objection filed by the Debtors or any other party in interest against the Class 2 Claims of the Senior Lenders, the Co-Proponents requests that the Class 2 Claims of the Senior Lenders be allowed for voting purposes, and that no Senior Lender be required to file any

motion pursuant to Bankruptcy Rule 3018(a) or otherwise to temporarily allow such Class 2 Claims.

## IV.   **Approval of Solicitation Procedures**

### A.   *Duties of Claims Agent*

39.   Pursuant to an order of the Bankruptcy Court entered on October 18, 2011 [Docket No. 22], the Debtors retained GCG, Inc. as their notice, claims and solicitation agent (the "Claims Agent") to assist the Debtors with the solicitation and voting process in the Chapter 11 Cases. The Co-Proponents request that the Claims Agent assist the Debtors in, among other things, (a) mailing Confirmation Hearing Notices to Holders of Claims and Equity Interests in the NonVoting Classes and other non-voting parties entitled to notice, (b) mailing Solicitation Packages, (c) soliciting votes on the Plan, (d) receiving, tabulating, and reporting on ballots cast for or against the Plan by Holders of Claims against the Debtors, (e) responding to inquiries from creditors and stakeholders relating to the Plan, the Disclosure Statement, the ballots and matters related thereto, including, without limitation, the procedures and requirements for voting to accept or reject the Plan and objecting to the Plan, and (f) if necessary, contacting creditors regarding the Plan and their ballots.

### B.   *Ballots and Notices*

40.   *Ballot Form.* Bankruptcy Rule 3017(d) requires the mailing of a form of ballot, which substantially conforms to Official Form No. 14, only to "creditors and equity security holders entitled to vote on the plan." Fed. R. Bankr. P. 3017(d). Holders of Class 2 Senior Lender Claims are the only creditors entitled to vote on the Plan. The Co-Proponents request approval of only one type of ballot for use in soliciting votes from Holders of Class 2 Senior Lender Claims in substantially the form attached as Exhibit 2 to the Disclosure Statement Order (the "Ballot Form"). The Ballot Form is based on Official Form No. 14, but has been modified to

address the particular aspects of these Chapter 11 Cases and include certain additional information that the Co-Proponents believe to be relevant and appropriate. The Ballot Form, as applicable, will be distributed to Holders of Claims in Class 2. All ballots will be accompanied by pre-addressed, postage prepaid return envelopes addressed to the Claims Agent.

41.    *Unimpaired Notice*. Under the Plan, certain Claims and Equity Interests are unimpaired as defined in section 1124 of the Bankruptcy Code (collectively, the "Unimpaired Claims" or "Unimpaired Equity Interests"). Under section 1126(f) of the Bankruptcy Code, the Holders of Unimpaired Claims and Unimpaired Equity Interests are conclusively presumed to have accepted the Plan, and therefore solicitation of votes with respect to such Unimpaired Claims and Unimpaired Equity Interests is not required. Under the Plan, Administrative Claims, Professional Fee Claims, Priority Tax Claims and Claims in Classes 1, 3, 4, 5 and 8B-8I are deemed Unimpaired Claims or Unimpaired Equity Interests and, thus, are conclusively presumed to accept the Plan.[11] Therefore, solicitation of votes with respect to such Claims and Equity Interests is not required. *See* 11 U.S.C. § 1126(f). Accordingly, such Claims and Equity Interests will not receive Solicitation Packages or ballots. Rather, in lieu thereof and in accordance with Bankruptcy Rule 3017(d), the Debtors will mail to the Holders of such Unimpaired Claims and Unimpaired Equity Interests a notice, substantially in the form of Exhibit 3 attached to the Disclosure Statement Order (the "Unimpairment Notice"), that gives (a) notice of the filing of the Plan, (b) notice that such party has been identified as the Holder of an Unimpaired Claim or Unimpaired Equity Interest, (c) instructions regarding the Confirmation Hearing and how to

---

[11]    The Plan provides that Equity Interests in Class 8A are Impaired as defined in section 1124 of the Bankruptcy Code and will receive no distributions or retain any property under the Plan (the "Non-Voting Impaired Equity Interests") if the Lender Confirmation Option is implemented, but are Unimpaired Equity Interests if the Debtor Confirmation Option is implemented.  Accordingly, Class 8A will receive both an Unimpairment Notice (as defined below) and a Non-Voting Impairment Notice (as defined below).  In either scenario, Equity Interests in Class 8A are not entitled to vote on the Plan.

obtain a copy of the Solicitation Package (other than a ballot) free of charge, and (d) detailed directions for filing objections to confirmation of the Plan.

42.     *Non-Voting Impaired Notice*. Under the Plan, certain Claims are Impaired as defined in section 1124 of the Bankruptcy Code but will receive no distributions or retain any property under the Plan (collectively, the "Non-Voting Impaired Claims").   Under section 1126(g) of the Bankruptcy Code, the Holders of Non-Voting Impaired Claims conclusively are presumed to have rejected the Plan, and therefore solicitation of votes with respect to such Non-Voting Impaired Claims is not required. Under the Plan, Claims in Classes 6 and 7 are deemed Non-Voting Impaired Claims and, thus, conclusively are presumed to reject the Plan.  Therefore, solicitation of votes with respect to such Claims is not required, 11 U.S.C. § 1126(g), and such Claims will not receive Solicitation Packages or ballots. Rather, in lieu thereof and in accordance with Bankruptcy Rule 3017(d), the Debtors will mail to the Holders of such Non-Voting Impaired Claims a notice, substantially in the form of Exhibit 4 attached to the Disclosure Statement Order (the "Non-Voting Impairment Notice"), that gives (a) notice of the filing of the Plan, (b) notice that such party has been identified as the Holder of an Non-Voting Impaired Claims, (c) instructions regarding the Confirmation Hearing and how to obtain a copy of the Solicitation Package (other than a ballot) free of charge, and (d) detailed directions for filing objections to confirmation of the Plan.

C.     *Content and General Transmittal of Solicitation Packages; Notice of Confirmation Hearing*

43.     Bankruptcy Rule 3017(d) specifies the materials to be distributed to all impaired creditors following approval of a disclosure statement. Pursuant to this Bankruptcy Rule, the Co-Proponents propose to transmit or cause to be transmitted on or before August 27, 2014 (the "Solicitation Mailing Date"), to the persons listed below, subject to the limitations contained

therein and elsewhere in this Motion, by United States mail, first-class postage prepaid, personal service, or overnight delivery, a solicitation package (the "Solicitation Package") containing a copy or conformed printed version of the following:

    a. a cover letter from the Co-Proponents attached as Exhibit 5 to the Disclosure Statement Order (i) describing the contents of the Solicitation Package and instructions on how paper copies of any materials that may be provided in CD-ROM format can be obtained at no charge; (ii) explaining that the Plan Supplement will be filed on or before September 10, 2014; and (iii) urging the members of the Voting Classes to vote to accept the Plan, which the Co-Proponents hereby request this Court to approve;

    b. the Notice of (A) Plan Confirmation Hearing, (B) Objection and Voting Deadlines and (C) Solicitation and Voting Procedures in substantially the form of the notice attached as Exhibit 6 to the Disclosure Statement Order (the "Confirmation Hearing Notice"), which the Co-Proponents hereby requests the Court to approve;

    c. the Disclosure Statement and the Plan (which may be furnished in the Solicitation Package as Exhibit A to the Disclosure Statement) in either paper or CD-ROM format;

    d. the Disclosure Statement Order (without exhibits attached) in either paper or CD-ROM format; and

    e. to the extent applicable, a ballot and/or notice, appropriate for the specific creditor, in substantially the forms attached to the Disclosure Statement Order (as may be modified for particular classes and with instruction attached thereto).

44.    In disseminating the Solicitation Packages, the Co-Proponents may include the Disclosure Statement and Plan in the form of a CD-ROM in an Adobe Acrobat (PDF) standard format. Parties will be provided a paper copy of the Disclosure Statement and Plan upon written request to the Claims Agent.

45.    In addition, the Co-Proponents will file certain documents related to the Plan (the "Plan Supplement") with the Court on or before September 10, 2014 (the "Exhibit Filing Date"). Copies of the Plan Supplement will be available in accordance with the procedures set forth in

paragraph 63 below. To the extent not filed with the Plan and Disclosure Statement, the Plan Supplement will include, but will not be limited to, the following documents: (a) the Amended and Restated Charter Documents; (b) the New LLC Agreement; (c) the New Management Agreement; (d) the Contracts Schedule (as the same may be amended from time to time through the Confirmation Date); and (e) such other documents that the Plan Proponents determine are necessary to include in the Plan Supplement for implementation of the Plan.

46.    Moreover, the Co-Proponents will provide copies of the Solicitation Package (other than a ballot) and the Plan Supplement to: (a) the Office of the United States Trustee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Attorney's Office for the District of Delaware; and (f) all parties that have filed requests for notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002 as of the date of mailing the Solicitation Package or filing the Plan Supplement (as applicable).

47.    The Co-Proponents propose that the following creditors receive the Solicitation Package: Senior Lenders holding Claims in Class 2.

48.    *Supplemental Notice of Confirmation Hearing*. Additionally, to ensure proper notice of the Confirmation Hearing, the Co-Proponents propose to send the Confirmation Hearing Notice to (i) all parties that received the Disclosure Statement Notice, (ii) parties to executory contracts and unexpired leases, which parties are not currently "creditors" as defined in section 101(10) of the Bankruptcy Code, and (iii) all parties listed on the creditor database maintained by the Claims Agent to the extent that such parties are not otherwise entitled to receive a Solicitation Package pursuant to the procedures described herein.[12]

---

[12]    At this time the Plan Proponents do not anticipate publishing the Confirmation Hearing Notice.

D. *Transmittal of Solicitation Packages to Holders of Contingent, Unliquidated, and Disputed Claims that Are Not Subject to an Objection*

49.     Bankruptcy Rule 3003(c)(2) provides, in relevant part, that "any creditor whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated ... who fails to [timely file a proof of claim] shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution." Therefore, such claimants or interest holders will not be mailed any documents or notices.[13]

50.     For claimants who have filed timely proofs of claim (or untimely proofs of claim which have been allowed as timely by the Court under applicable law on or before the applicable Voting Record Date), which, in whole or in part, reflect a disputed, unliquidated, or contingent claim, and which are not subject to an objection, the Co-Proponents propose to distribute (a) an Unimpairment Notice or Non-Voting Impairment Notice, as applicable, and (b) the Confirmation Hearing Notice.

E. *When No Notice or Transmittal Necessary*

51.     The Co-Proponents propose that notice materials not be sent to creditors whose Claims are based solely on amounts scheduled by the Debtors but whose Claims already have been paid or satisfied in the full scheduled amount; provided, however, if, and to the extent that, any such creditor would be entitled to receive any notice materials for any reason other than by virtue of the fact that its claim had been scheduled by the Debtors, then such creditor will be sent appropriate notice materials in accordance with the procedures set forth above. The Co-Proponents request that they not be required to send Solicitation Packages, individual solicitation materials, or other notices to (i) any creditor who filed a proof of claim if the amount asserted in

---

[13]     As discussed above, this provision shall not apply to Senior Lenders holding Claims in Class 2.

such proof of claim is less than or equal to the amount that already has been paid or (ii) the Holder of a Claim that has been disallowed in full by order of the Court.

52.    Because sending Solicitation Packages and other notices to outdated or otherwise improper addresses results in needless expense, the Co-Proponents request authority not to give notice or service of any kind to any person or entity to whom the Co-Proponents mailed the Disclosure Statement Hearing Notice and received any of such notices returned by the United States Postal Service (or other delivery service) marked "undeliverable as addressed," "moved left no forwarding address," "forwarding order expired," or any similar reason, unless the Co-Proponents have been informed in writing by such person of that person's new address. Co-Proponents further request that neither the Claims Agent nor the Co-Proponents be under any duty or obligation to attempt to find working addresses for or to re-mail Solicitation Packages that are returned marked "undeliverable."

**V.    Voting Deadline and Procedures for Vote Tabulation**

53.    *Voting Deadline*. Bankruptcy Rule 3017(c) requires the Court to fix a time within which Holders of Claims may vote to accept or reject the Plan. Pursuant to this Bankruptcy Rule, the Co-Proponents request this Court to enter an order setting 4:00 p.m. (prevailing Eastern Time) on September 17, 2014 (the "Voting Deadline") as the last date and time by which ballots accepting or rejecting the Plan must actually be received by the Claims Agent in order to be counted. Accordingly, because Co-Proponents intend to distribute Solicitation Packages on or before August 27, 2014, creditors will have approximately twenty-one days to have their ballots returned to the Claims Agent.

54.    To avoid uncertainty, provide guidance to Co-Proponents and the Claims Agent, and avoid the potential for inconsistent results, the Co-Proponents request that the Court,

pursuant to section 105(a) of the Bankruptcy Code, establish the guidelines set forth below for tabulating the votes to accept or reject the Plan.

55.    *Votes Counted*. The Co-Proponents propose that any timely received ballot that contains sufficient information to permit the identification of the claimant and is cast as an acceptance or rejection of the Plan will be counted and will be deemed to be cast as an acceptance or rejection, as the case may be, of the Plan. The foregoing general procedures will be subject to the following exceptions:

    a. If a Claim is deemed Allowed in accordance with the Plan, such Claim is Allowed for voting purposes in the deemed Allowed amount set forth in the Plan; and

    b. Ballots cast in amounts in excess of their allowed amount will only be counted to the extent of the creditors' allowed Claim.

56.    The Co-Proponents propose that neither the Co-Proponents, the Claims Agent, nor any other person or entity will be under any duty to provide notification of defects or irregularities with respect to delivered ballots, nor will any of them incur any liability for failure to provide such notification. The Claims Agent may either disregard, with no further notice, defective ballots, or it may attempt to have defective ballots cured.

57.    *Votes Not Counted*. The Co-Proponents further propose that the following ballots not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected:

    a. Any ballot received after the Voting Deadline unless the Co-Proponents have mutually agreed to grant an extension of the Voting Deadline in writing with respect to such ballot;

    b. Any ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;

    c. Any ballot cast by a person or entity that does not hold a Claim in a class that is entitled to vote to accept or reject the Plan;

d. Any ballot cast for a claim not listed on the Schedules, or scheduled at zero, in an unknown amount, or, in whole or in part, as unliquidated, contingent, or disputed, and for which no proof of claim was timely filed;

e. Any ballot that is properly completed, executed and timely filed, but (a) does not indicate an acceptance or rejection of the Plan, (b) indicates both an acceptance and rejection of the Plan, or (c) partially accepts and partially rejects the Plan;

f. Any ballot submitted by facsimile, telecopy or electronic mail;

g. Any unsigned ballot;

h. Any ballot sent to the Court, the Co-Proponents, or any party other than the Claims Agent; or

i. Any ballot not cast in accordance with the procedures approved in the Disclosure Statement Order.

58.    Additionally, the Co-Proponents propose that any duplicate ballots will be counted only once.

59.    Co-Proponents believe that the foregoing proposed procedures provide for a fair and equitable voting process.

60.    *Changing Votes*. Notwithstanding Bankruptcy Rule 3018, whenever two or more ballots are cast which attempt to vote the same Claim prior to the Voting Deadline, the last valid ballot received prior to the Voting Deadline will be deemed to reflect the voter's intent and thus to supersede any prior ballots, provided, however, that where an ambiguity exists as to which ballot was the latest mailed, the Claims Agent reserves the right to contact the creditor and calculate the vote according to such voter's stated intent. This procedure is without prejudice to the Co-Proponents' right to object to the validity of the second ballot on any basis permitted by law and, if the objection is sustained, to count the first ballot for all purposes. This procedure of counting the last ballot is consistent with the practice under various state and federal corporate

and securities laws. Moreover, it will spare the Court and the Co-Proponents the time and expense of responding to Rule 3018 Motions and attempting to show cause for changing votes.

61.    *No Vote Splitting*; Effect. The Co-Proponents propose that this Court clarify that Claim splitting is not permitted and order that creditors who vote must vote all of their Claims within a particular class to either accept or reject the Plan.

62.    *Nonsubstantive Changes*. The Co-Proponents request authority to make nonsubstantive changes, which the Co-Proponents mutually agree upon, to the Disclosure Statement, the Plan, the Ballot Form, and other notices and forms attached to the Disclosure Statement Order and related documents without further order of the Court, including without limitation changes to correct typographical and grammatical errors, insert dates and to make conforming changes among the Disclosure Statement, the Plan, the Ballots, the notices and any other materials in the Solicitation Package prior to mailing.

63.    *Copies and Review of Documents*. Copies of the Plan and Disclosure Statement (including after the Exhibit Filing Date, the Plan Supplement) and all pleadings and orders of the Bankruptcy Court are publicly available, for a fee via PACER at http://www.pacer.gov, or free of charge from the Claims Agent at http://www.gcginc.com/cases/securitynational/index.php.

## NOTICE

64.    No trustee or examiner has been appointed in the Chapter 11 Cases. The Debtors have provided notice of this Motion and a copy of this Motion, the Disclosure Statement Notice, the Disclosure Statement, and the Plan (attached as Exhibit A to the Disclosure Statement) to: (a) the Office of the United States Trustee; (b) the Securities and Exchange Commission; (c) the Internal Revenue Service; (d) the United States Attorney's Office for the District of Delaware; and (e) all parties that have filed requests for notice in these Chapter 11 Cases pursuant to

Bankruptcy Rule 2002 as of the date hereof. In light of the nature of the relief requested, the

Debtors submit that no further notice is required or needed under the circumstances.

## NO PRIOR REQUEST

65.      No prior motion for the relief requested herein has been made to this Court or any

other court.

66.      WHEREFORE, the Co-Proponents respectfully request that this Court (i) grant

the relief requested herein; (ii) enter the Disclosure Statement Order in the form attached hereto;

and (iii) grant such other and further relief as is just and proper.

Dated: August 12, 2014
Wilmington, Delaware

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Mark D. Collins*
Mark D. Collins (Del. Bar No. 2981)
Robert J. Stern, Jr. (Del. Bar No. 2915)
Cory D. Kandestin (Del. Bar No. 5025)
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-770

-and-

TROUTMAN SANDERS LLP
Jeffrey W. Kelley (Ga. Bar No. 412296)
Thomas E. Reilly (Ga. Bar No. 600195)
Stephen S. Roach (Ga. Bar No. 463206)
600 Peachtree Street, Suite 5200
Atlanta, Georgia 30308
Telephone: (404) 885-3000
Facsimile: (404) 962-6847

*Counsel for Bank of America, N.A., as Agent*
*for the Senior Lenders*

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Andrew R. Remming*
Robert J. Dehney (Del. Bar No. 3578)
Gregory W. Werkheiser (Del. Bar No. 3553)
Andrew R. Remming (Del. Bar No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for Security National Properties Funding III,*
*LLC, and Its Debtor Affiliates*

8447861.2